UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM, INC., a Delaware corporation; AMAZON.COM SERVICES LLC, a Delaware limited liability company; and CARTIER INTERNATIONAL A.G., a Swiss corporation,<br><br>Plaintiffs,<br><br>v.<br><br>An individual or entity doing business as the following Amazon Selling Account: YFXF; and DOES 1-10,<br><br>Defendants. | No.<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF** |

## I. INTRODUCTION

1. This case involves Defendants' unlawful and expressly prohibited advertisement, marketing, and sale of counterfeit luxury jewelry and accessories illegally bearing trademarks of Cartier International A.G. ("Cartier") in the Amazon.com store (the "Amazon Store"). Amazon.com, Inc. and Amazon.com Services LLC (collectively, "Amazon") and Cartier (collectively with Amazon, "Plaintiffs") jointly bring this lawsuit to permanently prevent and enjoin Defendants from causing future harm to Amazon's and Cartier's customers, reputations, and intellectual property ("IP"), and to hold Defendants accountable for their illegal actions.

2. Amazon owns and operates the Amazon Store and equivalent counterpart international stores and websites. Amazon's stores offer products and services to customers in more than 100 countries around the globe. Some of the products are sold directly by Amazon,

while others are sold by Amazon's numerous third-party selling partners. The Amazon brand is one of the most well-recognized, valuable, and trusted brands in the world. To protect its customers and safeguard its reputation for trustworthiness, Amazon invests heavily in both time and resources to prevent counterfeit goods from being sold in its stores. In 2021 alone, Amazon invested over $900 million and employed more than 12,000 people to protect its stores from fraud and abuse. Amazon stopped over 2.5 million suspected bad actor selling accounts before they published a single listing for sale.

3.      Defendants engaged in a sophisticated campaign to market, advertise, and sell counterfeit Cartier products in the Amazon Store, while disguising the products as non-branded in an attempt to evade Amazon's counterfeit detection tools. Specifically, Defendants opened a selling account in the Amazon Store under the name "YFXF" (the "YFXF Defendant") and listed for sale seemingly non-infringing, non-branded bracelets. Yet, when customers ordered the products, the YFXF Defendant shipped to the customer counterfeit bracelets bearing unauthorized Cartier trademarks. Upon information and belief, Defendants and unknown co-conspirators advertised their counterfeit products on third-party social media websites by using "hidden links" to direct their followers to the counterfeit Cartier products, while disguising the products as non-branded in the listings in the Amazon Store.

4.      Since its inception in 1847, Cartier has become one of the preeminent symbols of luxury in the world, producing and selling luxury items such as watches, handbags, fragrances, and jewelry, including the famous LOVE bracelet.

5.      Cartier's LOVE collection was first introduced in 1969 with the LOVE bracelet, and the design remains among Cartier's most iconic styles. The LOVE collection is one of the most famous bracelet designs and has been worn by celebrities such as Elizabeth Taylor, Kylie Jenner, and Kanye West, as described by an article in Harper's BAZAAR.[1]

---

[1] *See 10 Things You Didn't Know About The Cartier Love Bracelet*, Harper's Bazaar (Aug. 31, 2021), https://www.harpersbazaar.com.sg/watches-jewels/jewellery/10-things-didnt-know-cartier-love-bracelet/.

6. The distinctive LOVE bracelet design is comprised of a binding closure and screw motif, as shown in the photographs of the LOVE bracelet in *Figures 1 through 3* below.[2] Today, Cartier's LOVE collection has grown to encompass bracelets, earrings, necklaces, and rings.

*Figures 1 through 3 below are images of Cartier's iconic LOVE bracelet.*

*Figure 1*



---

[2] *See LOVE on Cartier® Official Website | Cartier US*, https://www.cartier.com/en-us/jewelry/bracelets/love/.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 3

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

*Figure 2*



*Figure 3*

7. Cartier owns, manages, enforces, licenses, and maintains intellectual property, including various trademarks. Relevant to this Complaint, Cartier owns the following registered trademarks ("Cartier Trademarks").

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 4

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

| Mark | Registration No. (International Classes) |
|---|---|
| *Cartier* | Registration No. 4,178,047 (IC 014) |
| CARTIER | Registration No. 759,202 (IC 014) |
| *Cartier* | Registration No. 411,240 (IC 014) |
| **CARTIER** | Registration No. 411,239 (IC 08, 014) |

True and correct copies of the registration certificates for the Cartier Trademarks are attached as **Exhibit A**.

8. From February 2021 through August 2021, Defendants advertised, marketed, offered, and sold counterfeit Cartier products in the Amazon Store, using Cartier registered trademarks, without authorization, to deceive customers about the authenticity and origin of the products and the products' affiliation with Cartier.

9. As a result of their illegal actions, Defendants have infringed and misused Cartier's IP, willfully deceived and harmed Amazon, Cartier, and their customers, compromised the integrity of the Amazon Store, and undermined the trust that customers place in Amazon and Cartier. Defendants' illegal actions have caused Amazon and Cartier to expend significant resources to investigate and combat Defendants' wrongdoing and to bring this lawsuit to prevent Defendants from inflicting future harm to Amazon, Cartier, and their customers.

## II.  PARTIES

10. Amazon.com, Inc. is a Delaware corporation with its principal place of business in Seattle, Washington. Amazon.com Services LLC is a Delaware company with its principal place of business in Seattle, Washington.

11. Cartier International A.G. is a Swiss corporation with its principal place of business in Switzerland. Cartier distributes its luxury goods in the United States through its affiliate, Richemont North America Inc., a Delaware corporation.

12. Defendants are a collection of individuals and entities, both known and unknown, who conspired and operated in concert with each other to engage in the counterfeiting scheme alleged in this Complaint. Defendants are subject to liability for their wrongful conduct both directly and under principles of secondary liability including, without limitation, *respondeat superior*, vicarious liability, and/or contributory infringement.

13. On information and belief, at least one defendant is an individual or entity doing business as "YFXF" (the "YFXF Defendant") that provided a business address in Luohe, China. On further information and belief, the YFXF Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

14. On information and belief, Defendants Does 1-10 (the "Doe Defendants") are individuals and entities working in active concert with each other and the named Defendants to knowingly and willfully manufacture, import, advertise, market, offer, and sell counterfeit Cartier products. The identities of the Doe Defendants are presently unknown to Plaintiffs.

## III.  JURISDICTION AND VENUE

15. The Court has subject matter jurisdiction over Amazon and Cartier's Lanham Act claims for 1) trademark infringement and 2) false designation of origin and false advertising pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a). The Court has subject matter jurisdiction over Amazon and Cartier's claims for violation of the Washington Consumer Protection Act pursuant to 28 U.S.C. §§ 1332 and 1367.

16. The Court has personal jurisdiction over all Defendants because they transacted business and committed tortious acts within and directed to the State of Washington, and Amazon's and Cartier's claims arise from those activities. Defendants affirmatively undertook to do business with Amazon, a corporation with its principal place of business in Washington, and sold in the Amazon Store products bearing counterfeit versions of the Cartier Trademarks and which otherwise infringed Cartier's IP. Defendants caused the shipment of products bearing counterfeit versions of the Cartier Trademarks to consumers in Washington. Each of the Defendants committed, or facilitated the commission of, tortious acts in Washington and has wrongfully caused Amazon and Cartier substantial injury in Washington.

17. Further, the named Defendant has consented to the jurisdiction of this Court by agreeing to the Amazon Services Business Solutions Agreement ("BSA"), which provides that the "Governing Courts" for claims to enjoin infringement or misuse of IP rights and claims related to the sale of counterfeit products in the Amazon Store are state or federal courts located in King County, Washington.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the Western District of Washington.

19. Venue is proper in this Court also with respect to Defendants by virtue of the allegations stated in paragraph 17 above, which are incorporated herein.

20. Pursuant to Local Civil Rule 3(e), intra-district assignment to the Seattle Division is proper because the claims arose in this Division, where (a) Amazon resides, (b) injuries giving rise to suit occurred, and (c) Defendants directed their unlawful conduct.

## IV. FACTS

### A. Amazon's Efforts to Prevent the Sale of Counterfeit Goods

21. Amazon works hard to build and protect the reputation of its stores as a place where customers can conveniently select from a wide array of authentic goods and services at competitive prices. Amazon invests vast resources to ensure that when customers make purchases in Amazon's stores—either directly from Amazon or from one of its millions of third-party

sellers—customers receive authentic products made by the true manufacturer of those products.

22. A small number of bad actors seek to take advantage of the trust customers place in Amazon by attempting to create Amazon selling accounts to advertise, market, offer, and sell counterfeit products. These bad actors seek to misuse and infringe the trademarks and other IP of the true manufacturers of those products to deceive Amazon and its customers. This unlawful and expressly prohibited conduct undermines the trust that customers, sellers, and manufacturers place in Amazon and tarnishes Amazon's brand and reputation, thereby causing irreparable harm to Amazon.

23. Amazon prohibits the sale of inauthentic and fraudulent products and is constantly innovating on behalf of customers and working with brands, manufacturers, rights owners, and others to improve the detection and prevention of counterfeit products from ever being offered to customers in Amazon's stores. Amazon employs dedicated teams of software engineers, research scientists, program managers, and investigators to prevent counterfeits from being offered in Amazon's stores. Amazon's systems automatically and continuously scan thousands of data points to detect and remove counterfeits from its stores and to terminate the selling accounts of bad actors before they can offer counterfeit products. When Amazon identifies issues based on this feedback, it takes action to address them. Amazon also uses this intelligence to improve its proactive prevention controls.

24. In 2017, Amazon launched the Amazon Brand Registry, a free service to any rights owner with a government-registered trademark, regardless of the brand's relationship with Amazon. Brand Registry delivers automated brand protections that use machine learning to predict infringement and proactively protect brands' IP. Brand Registry also provides a powerful Report a Violation Tool that allows brands to search for and accurately report potentially infringing products using state-of-the-art image search technology. More than 700,000 brands, including Cartier, are enrolled in Brand Registry, and those brands are finding and reporting 99% fewer suspected infringements since joining Brand Registry.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

25. In 2018, Amazon launched Transparency, a product serialization service that effectively eliminates counterfeits for enrolled products. Brands enrolled in Transparency can apply a unique 2D code to every unit they manufacture, which allows Amazon, other retailers, law enforcement, and customers to determine the authenticity of any Transparency-enabled product, regardless of where the product was purchased. In 2021, over 23,000 brands were using Transparency, enabling the protection of more than 750 million product units.

26. In 2019, Amazon launched Project Zero, a program to empower brands to help Amazon drive counterfeits to zero. Amazon's Project Zero introduced a novel self-service counterfeit removal tool that enables brands to remove counterfeit listings directly from Amazon's stores. This enables brands to take down counterfeit product offerings on their own within minutes. In 2021, there were more than 20,000 brands enrolled in Project Zero. For every listing removed by a brand, Amazon's automated protections removed more than 1,000 listings through scaled technology and machine learning, stopping those listings from appearing in Amazon's stores.

27. Amazon also uses industry-leading technology to analyze hundreds of unique data points and robust processes to verify information provided by potential sellers, and its ongoing efforts have been successful. Amazon has robust seller verification processes. In 2021, Amazon prevented over 2.5 million attempts to create new selling accounts, stopping bad actors before they published a single product for sale. Amazon is also constantly innovating on these tools and systems. For example, Amazon is implementing one-on-one interviews with prospective sellers through video chat or in person at an Amazon office to verify sellers' identities and government-issued documentation. Moreover, Amazon also is verifying new and existing sellers' addresses by sending information, including a unique code, to the sellers' addresses. These measures have made it more difficult for bad actors to hide.

28. Once a seller begins selling in Amazon's stores, Amazon continues to monitor the selling account's activities for risks. If Amazon identifies a bad actor, it closes that actor's selling account, withholds funds disbursement, and investigates whether other accounts are involved in

unlawful activities.

29. In addition to the measures discussed above, Amazon actively cooperates with rights owners and law enforcement to identify and prosecute bad actors suspected of engaging in illegal activity. Lawsuits, like this one, are integral components of Amazon's efforts to combat counterfeits.

**B. Cartier and Its Anti-Counterfeiting Efforts**

30. Cartier goes to great lengths to protect consumers from counterfeits of its products, and is committed to leading efforts to combat counterfeit products. Cartier utilizes both internal and external resources to combat counterfeits, piracy, and distribution abuse online. This includes trained staff who consistently monitor online retailer sites around the world for IP infringements and counterfeit sellers. Cartier also works with a third-party brand protection service vendor on the detection and removal of product listings violating Cartier's IP rights.

31. Cartier enrolled in Amazon Brand Registry on June 9, 2017 and Project Zero on May 29, 2019. Cartier actively uses the tools and protections provided by these programs.

**C. Defendants Created an Amazon Selling Account and Agreed Not to Sell Counterfeit Goods**

32. Defendants controlled and operated the YFXF Selling Account detailed in Section D below, through which they sought to advertise, market, sell, and distribute counterfeit Cartier products. In connection with the YFXF Selling Account, Defendants provided names, email addresses, and banking information for each account.

33. To become a third-party seller in the Amazon Store, sellers are required to agree to the BSA, which governs the applicant's access to and use of Amazon's services and states Amazon's rules for selling in the Amazon Store. By entering into the BSA, each seller represents and warrants that it "will comply with all applicable Laws in [the] performance of [its] obligations and exercise of [its] rights" under the BSA. A true and correct copy of the applicable version of the BSA, namely, the version Defendants last agreed to when using Amazon's Services, is attached as **Exhibit B**.


34. Under the terms of the BSA, Amazon specifically identifies the sale of counterfeit goods as "deceptive, fraudulent, or illegal activity" in violation of Amazon's policies, reserving the right to withhold payments and terminate the account of any seller who engages in such conduct. Ex. B, ¶¶ 2-3. The BSA requires the seller to defend, indemnify and hold harmless Amazon against any claims or losses arising from the seller's "actual or alleged infringement of any Intellectual Property Rights." *Id.* ¶ 6.1.

35. Additionally, the BSA incorporates, and sellers therefore agree to be bound by, Amazon's Anti-Counterfeiting Policy, the applicable version of which is attached as **Exhibit C**. The Anti-Counterfeiting Policy expressly prohibits the sale of counterfeit goods in the Amazon Store:

- The sale of counterfeit products is strictly prohibited.
- You may not sell any products that are not legal for sale, such as products that have been illegally replicated, reproduced, or manufactured[.]
- You must provide records about the authenticity of your products if Amazon requests that documentation[.]

Failure to abide by this policy may result in loss of selling privileges, funds being withheld, destruction of inventory in our fulfilment centers, and other legal consequences.

*Id.*

36. Amazon's Anti-Counterfeiting Policy further describes Amazon's commitment to preventing the sale and distribution of counterfeit goods in the Amazon Store together with the consequences of doing so:

- Sell Only Authentic and Legal Products. It is your responsibility to source, sell, and fulfill only authentic products that are legal for sale. Examples of prohibited products include:
    - Bootlegs, fakes, or pirated copies of products or content
    - Products that have been illegally replicated, reproduced, or manufactured
    - Products that infringe another party's intellectual property rights
- Maintain and Provide Inventory Records. Amazon may request that you provide documentation (such as invoices) showing the authenticity of your

- products or your authorization to list them for sale. You may remove pricing information from these documents, but providing documents that have been edited in any other way or that are misleading is a violation of this policy and will lead to enforcement against your account.

- Consequences of Selling Inauthentic Products. If you sell inauthentic products, we may immediately suspend or terminate your Amazon selling account (and any related accounts), destroy any inauthentic products in our fulfillment centers at your expense, and/or withhold payments to you.

- Amazon Takes Action to Protect Customers and Rights Owners. Amazon also works with manufacturers, rights holders, content owners, vendors, and sellers to improve the ways we detect and prevent inauthentic products from reaching our customers. As a result of our detection and enforcement activities, Amazon may:

    - Remove suspect listings.

    - Take legal action against parties who knowingly violate this policy and harm our customers. In addition to criminal fines and imprisonment, sellers and suppliers of inauthentic products may face civil penalties including the loss of any amounts received from the sale of inauthentic products, the damage or harm sustained by the rights holders, statutory and other damages, and attorney's fees.

- Reporting Inauthentic Products. We stand behind the products sold on our site with our A-to-z Guarantee, and we encourage rights owners who have product authenticity concerns to notify us. We will promptly investigate and take all appropriate actions to protect customers, sellers, and rights holders. You may view counterfeit complaints on the Account Health page in Seller Central.

*Id.*

37. When they registered as third-party sellers in the Amazon Store and established their Selling Account, Defendants agreed not to advertise, market, offer, sell, or distribute counterfeit products.

D. **Inspection of Counterfeit Products from Defendants' Selling Account**

38. As set forth below, Cartier has confirmed that the products offered for sale by the YFXF Defendant are infringing products made to imitate authentic Cartier products, and which bear counterfeit marks without authorization that are identical to or substantially indistinguishable from Cartier Trademarks.

39. At all times described herein, the YFXF Selling Account was controlled and operated by the YFXF Defendant and, on information and belief, other unknown parties.

40. From February 2021 through at least August 2021, the YFXF Defendant advertised, marketed, offered, and sold inauthentic Cartier LOVE rings in the Amazon Store bearing unauthorized Cartier Trademarks through the YFXF Selling Account. Amazon sent images and a physical sample to Cartier of a product from quarantined inventory for the YFXF Selling Account. Cartier reviewed the images and physical sample of the product and confirmed that the item is counterfeit. The product's serial number does not correspond to serial numbers assigned to genuine Cartier LOVE rings, and certain of the product's aesthetic features differ from those of genuine Cartier LOVE rings.

### E. Amazon and Cartier Shut Down Defendants' Account.

41. By selling counterfeit Cartier products, Defendants violated the BSA and Amazon's policies. On information and belief, Defendants also knowingly and willfully used Cartier's IP in connection with the advertisement, marketing, distribution, offering for sale, and sale of counterfeit and infringing Cartier products.

42. At all times, Defendants knew they were prohibited from violating third-party IP rights or any applicable laws while selling products in the Amazon Store. Defendants have deceived Amazon's customers and Amazon, infringed and misused the IP rights of Cartier, harmed the integrity of and customer trust in the Amazon Store, and tarnished Amazon's and Cartier's brands.

43. Amazon, after receiving notice from Cartier, verified Defendants' unlawful sale of counterfeit Cartier products, conducted an investigation, and blocked Defendants' Selling Account. In doing so, Amazon exercised its rights under the BSA to protect customers and the reputations of Amazon and Cartier.

## V. CLAIMS

**FIRST CLAIM**
*(by Cartier against all Defendants)*
**Trademark Infringement – 15 U.S.C. § 1114**

44. Plaintiff Cartier incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

45. Defendants' activities constitute infringement of the Cartier Trademarks as described in the paragraphs above.

46. Cartier advertises, markets, offers, and sells its products using the Cartier Trademarks described above and uses those trademarks to distinguish its products from the products and related items of others in the same or related fields.

47. Because of Cartier's long, continuous, and exclusive use of the Cartier Trademarks identified in this Complaint, the trademarks have come to mean and are understood by customers and the public to signify products from Cartier.

48. Defendants unlawfully advertised, marketed, offered, and sold products bearing counterfeit versions of the Cartier Trademarks with the intent and likelihood of causing customer confusion, mistake, and deception as to the products' source, origin, and authenticity. Specifically, Defendants intended customers to believe, incorrectly, that the products originated from, were affiliated with, and/or were authorized by Cartier and likely caused such erroneous customer beliefs.

49. As a result of Defendants' wrongful conduct, Cartier is entitled to recover its actual damages, Defendants' profits attributable to the infringement, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a) and (b). Alternatively, Cartier is entitled to statutory damages under 15 U.S.C. § 1117(c).

50. Cartier is further entitled to injunctive relief, including an order impounding all infringing products and promotional materials in Defendants' possession. Cartier has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) the Cartier Trademarks are unique and valuable properties that have no readily determinable market value; (b) Defendants' infringement constitutes harm to Cartier and Cartier's reputation and goodwill such that Cartier could not be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the infringing materials; and (d) Defendants' wrongful conduct and the resulting harm to Cartier is likely to be continuing.

**SECOND CLAIM**
*(by Cartier against all Defendants)*
**False Designation of Origin and False Advertising – 15 U.S.C. § 1125(a)**

51. Plaintiff Cartier incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

52. Cartier owns the Cartier Trademarks and advertises, markets, offers, and sells its products using those trademarks described above and uses the trademarks to distinguish its products from the products and related items of others in the same or related fields.

53. Because of Cartier's long, continuous, and exclusive use of the Cartier Trademarks, they have come to mean, and are understood by customers, end users, and the public to signify products from Cartier.

54. Defendants' wrongful conduct includes the infringement of the Cartier Trademarks in connection with Defendants' commercial advertising or promotion and offering for sale and sale of counterfeit Cartier products in interstate commerce.

55. In advertising, marketing, offering, and selling products bearing counterfeit versions of the Cartier Trademarks, Defendants have used, and on information and belief continue to use, the trademarks referenced above to compete unfairly with Cartier and to deceive customers. Upon information and belief, Defendants' wrongful conduct misleads and confuses customers and the public as to the origin and authenticity of the goods and services advertised, marketed, offered, or sold in connection with the Cartier Trademarks and wrongfully trades upon Cartier's goodwill and business reputation.

56. Defendants' conduct constitutes (a) false designation of origin, (b) false or misleading description, and (c) false or misleading representation that products originate from or are authorized by Cartier, all in violation of 15 U.S.C. § 1125(a)(1)(A).

57. Defendants' conduct also constitutes willful false statements in connection with goods and/or services distributed in interstate commerce in violation of 15 U.S.C. § 1125(a)(1)(B).

58. Cartier is entitled to an injunction against Defendants, their officers, agents, representatives, servants, employees, successors and assigns, and all other persons in active concert or participation with them, as set forth in the Prayer for Relief below. Defendants' acts have caused irreparable injury to Cartier. The injury to Cartier is irreparable and, on information and belief, continuing. An award of monetary damages cannot fully compensate Cartier for its injuries, and Cartier lacks an adequate remedy at law.

59. Cartier is further entitled to recover Defendants' profits, Cartier's damages for its losses, and Cartier's costs to investigate and remediate Defendants' conduct and bring this action, including its attorney's fees, in an amount to be determined. Cartier is also entitled to the trebling of any damages award as allowed by law.

## THIRD CLAIM
*(by Amazon against all Defendants)*
**False Designation of Origin and False Advertising – 15 U.S.C. § 1125(a)**

60. Plaintiff Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

61. Amazon's reputation for trustworthiness is at the heart of its relationship with customers. Defendants' actions in selling counterfeits pose a threat to Amazon's reputation because they undermine and jeopardize customer trust in the Amazon Store.

62. Specifically, Defendants deceived Amazon and its customers about the authenticity of the products they were advertising, marketing, offering, and selling, in direct and willful violation of the BSA and Amazon's Anti-Counterfeiting Policies. Defendants' deceptive acts were material to Amazon's decision to allow Defendants to sell their products in the Amazon Store because Amazon would not have allowed Defendants to do so but for their deceptive acts.

63. In advertising, marketing, offering, and selling counterfeit Cartier products in the Amazon Store, Defendants made false and misleading statements of fact about the origin, sponsorship, or approval of those products in violation of 15 U.S.C. § 1125(a)(1)(A).

64. Defendants' acts also constitute willful false statements in connection with goods and/or services distributed in interstate commerce in violation of 15 U.S.C. § 1125(a)(1)(B).

65. As described above, Defendants, through their illegal acts, have willfully deceived Amazon and its customers, jeopardized the trust that customers place in the Amazon Store, tarnished Amazon's brand and reputation, and harmed Amazon and its customers. Defendants' misconduct has also caused Amazon to expend significant resources to investigate and combat Defendants' wrongdoing and to bring this lawsuit to prevent Defendants from causing further harm to Amazon and its customers. Defendants' illegal acts have caused irreparable injury to Amazon and, on information and belief, that injury is ongoing at least to the extent that Defendants continue to establish seller accounts under different or false identities. An award of monetary damages alone cannot fully compensate Amazon for its injuries, and thus Amazon lacks an adequate remedy at law.

66. Amazon is entitled to an injunction against Defendants, their officers, agents, representatives, servants, employees, successors and assigns, and all other persons in active concert or participation with them, as set forth in the Prayer for Relief below, along with its attorneys' fees and costs in bringing this lawsuit.

**FOURTH CLAIM**
*(by Cartier and Amazon against all Defendants)*
**Violation of Washington Consumer Protection Act, RCW 19.86.010,** *et seq.*

67. Plaintiffs incorporate by reference the allegations of the preceding paragraphs as though set forth herein.

68. Defendants' advertising, marketing, offering, and selling of counterfeit Cartier products constitute an unfair method of competition and unfair and deceptive acts or practices in the conduct of trade or commerce, in violation of RCW 19.86.020.

69. Defendants' advertising, marketing, offering, and selling of counterfeit Cartier products harms the public interest by deceiving customers about the authenticity, origins, and sponsorship of the products.

70. Defendants' advertising, marketing, offering, and selling of counterfeit Cartier products directly and proximately causes harm to and tarnished Plaintiffs' reputations and brands and damages their business and property interests and rights.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

71. Accordingly, Plaintiffs seek to enjoin further violations of RCW 19.86.020 and recover their attorneys' fees and costs. Cartier further seeks to recover its actual damages, trebled.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following relief:

A. That the Court issue an order permanently enjoining Defendants, their officers, agents, representatives, servants, employees, successors, and assigns, and all others in active concert or participation with them, from:

(i) selling products in Amazon's stores;

(ii) selling products to Amazon or any affiliate;

(iii) opening or attempting to open any Amazon selling accounts;

(iv) manufacturing, distributing, offering to sell, or selling any product using Cartier's brand or trademarks or which otherwise infringes Cartier's intellectual property on any platform or in any medium;

(v) assisting, aiding or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs (i) through (iv) above;

B. That the Court enter judgment in Plaintiffs' favor on all claims brought by them;

C. That the Court enter an order pursuant to 15 U.S.C. § 1116 impounding all counterfeit and infringing products bearing the Cartier Trademarks or that otherwise infringe Cartier's IP, and any related materials, including business records, in Defendants' possession or under their control;

D. That the Court enter an order requiring Defendants to provide Plaintiffs a full and complete accounting of all amounts due and owing to Cartier as a result of Defendants' unlawful activities;

E. That Defendants be required to pay all general, special, and actual damages which Cartier has sustained or will sustain as a consequence of Defendants' unlawful acts, together with statutory damages, and that such damages be enhanced, doubled, or trebled as provided for by

15 U.S.C. § 1117(b), RCW 19.86.020, or otherwise allowed by law;

F.     That Defendants be ordered to pay the maximum amount of prejudgment interest authorized by law;

G.     That Defendants be required to pay the costs of this action and Plaintiffs' reasonable attorneys' fees incurred in prosecuting this action, as provided for by 15 U.S.C. § 1117, RCW 19.86.020, or otherwise allowed by law;

H.     That the Court enter an order requiring that identified financial institutions restrain and transfer to Plaintiffs all amounts arising from Defendants' unlawful counterfeiting activities as set forth in this lawsuit, up to a total amount necessary to satisfy monetary judgment in this case; and

I.     That the Court grant Plaintiffs such other, further, and additional relief as the Court deems just and equitable.

DATED this 15th day of June 2022.

DAVIS WRIGHT TREMAINE LLP
*Attorneys for Plaintiffs*

By *s/ Scott R. Commerson*
Scott R. Commerson, WSBA #58085
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566
Tel: (213) 633-6800
Fax: (213) 633-6899
Email: scottcommerson@dwt.com

By *s/ Lindsey Mundt*
Lindsey E. Mundt, WSBA #49394
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Tel: (206) 622-3150
Fax: (206) 757-7700
Email: lindseymundt@dwt.com