UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM, INC.,<br>AMAZON.COM SERVICES LLC, and<br>CARTIER INTERNATIONAL A.G.,<br><br>                         Plaintiffs,<br><br>        v.<br><br>WHATSOFUN, INC.,<br><br>                         Defendant. | CASE NO. C22-841 MJP<br><br>ORDER ON PLAINTIFFS'<br>MOTION FOR DEFAULT<br>JUDGMENT |

This matter comes before the Court on Plaintiffs' Motion for Default Judgment. (Dkt. No. 43.) Having reviewed the Motion and all supporting materials, the Court GRANTS the Motion, ENTERS default judgment, and PERMANENTLY ENJOINS Defendant as set forth in this Order.

**BACKGROUND**

Plaintiffs Amazon.com, Inc., Amazon.com Services LLC, and Cartier International A.G., have filed suit against Defendant Whatsofun, Inc., alleging that Defendant sold counterfeit

1   Cartier-branded rings on Amazon's internet-based store. (Amended Complaint (AC) ¶ 3 (Dkt.

2   No. 22); Declaration of Robert Garrett ¶ 3 (Dkt. No. 45).) Plaintiffs pursue claims of: (1)

3   Trademark infringement and counterfeiting in violation of 15 U.S.C. § 1114 (AC ¶¶ 48-54); (2)

4   false designation of origin and false advertising in violation of 15 U.S.C. § 1125(a) (AC ¶¶ 55-

5   70); (3) violations of the Washington Consumer Protection Act (AC ¶¶ 71-75).

6         In addition to the allegations in the Amended Complaint, which the Court accepts as true,

7   Plaintiffs have provided additional evidence relevant to their claims. Plaintiffs provide a

8   declaration of Robert Garrett, an Amazon employee, who explains that Defendant used "hidden

9   links" to sell counterfeit Cartier rings on Amazon's webstore and that Amazon then quarantined

10   a sample of the inventory of counterfeit rings. (Garrett Decl. ¶¶ 4-5.) A representative from

11   Cartier states that Cartier reviewed a sample of rings obtained by Amazon and determined that

12   they were counterfeit. (Declaration of Emma-Jane Triton ¶¶ 4-5 (Dkt. No. 44).) According to

13   Amazon, its records show that Defendant "sold and shipped at least $602 worth of counterfeit

14   Cartier rings through this scheme, including to consumers in Washington state." (Garrett Decl. ¶

15   6.) Without any specific evidence, Amazon's declarant suggests that "it is reasonable to infer that

16   the Selling Account sold more Cartier counterfeit products than what can be discerned from

17   Amazon's sales records." (Id.)

18         Plaintiffs have served Defendant and obtained entry of default. (Dkt. Nos. 26, 38.)

19   Plaintiffs now move for default judgment and entry of a permanent injunction.

20                                    **ANALYSIS**

21   **A.**     **Legal Standard**

22         The Court has discretion to default judgment. Fed. R. Civ. P. 55(b); see Alan Neuman

23   Prods., Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1988). "Factors which may be considered

24

1    by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility

2    of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of

3    the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute

4    concerning material facts; (6) whether the default was due to excusable neglect, and (7) the

5    strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."

6    Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In performing this analysis, "the

7    general rule is that well-pled allegations in the complaint regarding liability are deemed true."

8    Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002) (quotation and citation

9    omitted). And "[t]he district court is not required to make detailed findings of fact." Id.

10   **B.    Jurisdiction**

11          Before entering default judgment, the Court must assure itself that it has subject matter

12   jurisdiction and personal jurisdiction of Defendant.

13          There is little doubt that the Court has subject matter jurisdiction over Plaintiffs' claims.

14   Plaintiffs brings claims under various federal laws, which fall within the Court's original

15   jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a). And the Court has

16   supplemental jurisdiction over Plaintiffs' state-law claim pursuant to 28 U.S.C. § 1367(a).

17          The Court also finds that it has personal jurisdiction over Defendant, who is a

18   nonresident. First, Plaintiffs have shown that Defendant signed an agreement containing a forum

19   selection clause through which Defendant consented to personal jurisdiction in this forum. See

20   Chan v. Soc'y Expeditions, Inc., 39 F.3d 1398, 1406–07 (9th Cir. 1994); (AC ¶¶ 19, 36 & Ex.

21   B). This alone satisfies the Court that it has personal jurisdiction. Second, the Court finds that it

22   has personal jurisdiction due to Defendant's purposeful direction of its activities in this forum,

23   pursuant to Fed. R. Civ. P. 4(k)(2), the federal long-arm statute. Under Rule 4(k)(2), personal

24

1   jurisdiction may be established over a defendant if the claims arise under federal law and: "(A)

2   the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B)

3   exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ.

4   P. 4(k)(2). To measure whether the exercise of personal jurisdiction is consistent with the

5   Constitution, the Court engages in a "due process analysis [that] is nearly identical to the

6   traditional personal jurisdiction analysis with one significant difference: rather than considering

7   contacts between the [defendant] and the forum state, we consider contacts with the nation as a

8   whole." Lang Van, Inc. v. VNG Corp., 40 F.4th 1034, 1039 (9th Cir. 2022) (citation and

9   quotation omitted). To satisfy due process in this context, Plaintiffs must demonstrate that: (1)

10  the nonresident defendant has either purposefully directed his activities at the United States or

11  purposefully availed himself of the privilege of conducting activities in the forum; (2) the claim

12  arises out of or relates to the defendant's forum-related activities; and (3) the exercise of

13  jurisdiction comports with fair play and substantial justice. Schwarzenegger v. Fred Martin

14  Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). If Plaintiffs satisfy the first two elements, the

15  burden shifts to Defendant to make a compelling case that the exercise of jurisdiction would not

16  be reasonable. Id. at 802. To establish "purposeful direction," the Court applies the three-part

17  "effects" test from Calder v. Jones, 465 U.S. 783 (1984), which requires that the defendant must

18  have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm

19  that the defendant knows is likely to be suffered in the forum state." Mavrix Photo, Inc. v. Brand

20  Techs., Inc., 647 F.3d 1218, 1228 (9th Cir. 2011) (quotation and citation omitted).

21          The Court is satisfied that Plaintiffs have satisfied the requisite elements of Rule 4(k)(2).

22  Plaintiffs pursues claims under federal law against a Defendant, who is outside of any state

23

24

1   court's general jurisdiction. And the Court finds that the exercise of personal jurisdiction

2   comports with the Constitution. The Court the three factors supporting this latter finding.

3        First, Defendant purposefully directed its activities at the United States. All three

4   elements of the "effects" test are satisfied. One, Defendant used its Amazon seller account to

5   advertise the sale of the counterfeit rings. Two, Defendant directed the counterfeit rings to

6   consumers in the United States by using Amazon's website, which targets American buyers.

7   Three, it was foreseeable that Defendant's marketing and sales of the counterfeit rings would

8   harm Amazon in the United States—where it is headquartered.

9        Second, Plaintiffs' claims arise out of Defendant's forum-based activities. The Ninth

10  Circuit "relies on a 'but for' test to determine whether a particular claim arises out of forum-

11  related activities and thereby satisfies the second requirement for specific jurisdiction. <u>Ballard v.</u>

12  <u>Savage</u>, 65 F.3d 1495, 1500 (9th Cir. 1995). Plaintiffs have satisfied this by showing that its

13  claims would not exist but-for Defendants' sale of counterfeit rings and its decision to target

14  consumers in the United States.

15       Third, because Plaintiffs have satisfied the first two prongs of personal jurisdiction under

16  Rule 4(k)(2), the burden shifts to Defendant to show personal jurisdiction is not reasonably

17  exercised here. By failing to appear in this matter, Defendant has conceded that the exercise is

18  reasonable. But for the sake of completeness, the Court has considered this factor and finds that

19  the exercise of personal jurisdiction is reasonable. The Court does so by balancing the following

20  factors:

21       (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in
        defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's
22      state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient
        judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's
23      interest in convenient and effective relief; and (7) the existence of an alternative forum.

24

1    Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1021 (9th Cir. 2002). The balance of

2    these factors shows that that the exercise of personal jurisdiction is reasonable. Defendant

3    purposefully directed his activities at the United States. There is no evidence of the burden on

4    Defendant in defending itself in this Court or conflicts with the sovereignty of a foreign state.

5    The United States has an interest in making sure that Plaintiffs' valid intellectual property rights

6    are protected and this forum can efficiently resolve the conflict. And Plaintiffs have an interest in

7    obtaining convenient and effective relief in this Court where there are no alternative fora

8    identified. Accordingly, the Court finds the exercise of personal jurisdiction to be reasonable.

9    **C.    Eitel Factors Favor Default Judgment**

10        The Court reviews the Eitel factors to assess whether default judgment should be entered

11   and in what specific amounts. On balance, the seven Eitel factors weigh in favor of entry of

12   default judgment in Plaintiffs' favor.

13        **1.    Factor One: Prejudice to Plaintiffs**

14        Without entry of default judgment Plaintiffs will be prejudiced. Plaintiffs have attempted

15   to litigate this case and vindicate their rights under federal and state law against Defendant.

16   Defendant has failed to appear or participate in this litigation despite being personally served.

17   Plaintiffs face prejudice by not being able to obtain complete relief on their claims against

18   Defendant without entry of default judgment. This factor weighs in favor of granting default

19   judgment.

20        **2.    Factors Two and Three: Merits of Plaintiffs' Claims and Sufficiency of the
            Amended Complaint**

21
22        Plaintiffs have demonstrated the merit of their claims and the sufficiency of the Amended

     Complaint. The Court reviews each claim.
23

24

### a. Trademark Infringement

To prevail on a trademark infringement claim, Cartier must establish (1) a protected trademark and (2) the use of that trademark by a party accused of infringing on the trademark is likely to cause consumer confusion. See Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1354 (9th Cir. 1985). Federal registration of a mark provides prima facie evidence of the mark's validity and entitles the plaintiff to a strong presumption that the mark is protectable. See Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 927-28 (9th Cir. 2005).

As alleged by Plaintiffs, Cartier has proven this claim by demonstrating the following: (1) it owns the Cartier Trademarks (FAC ¶ 7, Ex. A; Tritton Decl. ¶ 3, Ex. A); (2) it reviewed samples of products that Defendant shipped to Amazon (FAC ¶ 43;Garrett Decl. ¶ 5; and Tritton Decl. ¶ 5); and (3) it determined those products were counterfeit imitations of Cartier-branded products that illegally bear the Cartier Trademarks based on deviations from the authentic products' packaging and materials. (FAC ¶ 43; Tritton Decl. ¶ 5). The Court finds entry of default on these claims proper.

### b. False Designation of Origin Claims

To prevail on their claim of false designation of origin, Plaintiffs must show Defendant "(1) use[d] in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services." Freecycle Network, Inc. v. Oey, 505 F.3d 898, 902 (9th Cir. 2007). Any person who believes they are likely to be damaged by such an act may sue. 15 U.S.C. § 1125(a); Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 131–32 (2014).

Both Cartier and Amazon have proven their false designation claims. Plaintiffs have shown that Defendant sold counterfeit imitations of Cartier-branded products bearing the Cartier

trademarks. (FAC ¶¶ 42-47; Garrett Decl. ¶¶ 4-6; Tritton Decl. ¶¶ 4-5.) This misuse of the trademarks was designed to deceive the public as to the authenticity of Defendant's products. (FAC ¶¶ 9, 66, 69.) And Defendant's use of the Cartier trademarks harmed its goodwill. (See FAC ¶ 9; Tritton Decl. ¶ 7.) Similarly, Defendant deceived Amazon about the authenticity of the counterfeit products it was advertising, marketing, offering, and selling through Amazon's website. As alleged, this violated Amazon's Seller Agreement. (FAC ¶ 36, Ex. B.) And Defendant's use of Amazon's website to sell its goods harmed Amazon's reputation and brand. (FAC ¶¶ 2, 22-30, 69.) The Court finds entry of default on these claims proper.

### c.    CPA Claim

To prevail on its CPA claim, Plaintiffs must establish "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 37 (2009) (citing Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 784 (1986)). "[A] claim under the Washington CPA may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." Klem v. Wash. Mut. Bank, 176 Wn.2d 771, 787 (2013).

The Court agrees with Plaintiffs that they have stated a claim under the CPA. Defendant's sale of counterfeit rings is an unfair and deceptive act that occurred in trade, affecting the public interest, and which has harmed Plaintiffs' goodwill. The Court finds entry of default on this claim proper.

### 3.    Factor Four: Sum of Money at Stake

The amount of money Amazon determined Defendant has made from selling counterfeit rings is quite small. Amazon has identified only $602 in proceeds from the sales. While Amazon

Case 2:22-cv-00841-MJP   Document 47   Filed 04/02/24   Page 9 of 12

suggests that there are likely more sums that were obtained, the Court has no evidence before it to measure the reasonableness of this assertion. As such, given the small amount of money at stake, this factor weighs against entry of default judgment.

**4.      Factor Five: Possibility of Dispute of Material Facts**

The Court finds little possibility that the core, material facts are in dispute. Not only has Defendant failed to appear in this action, but Plaintiffs have provided detailed evidence in support of their claims that is likely difficult to be rebutted. This factor favors entry of default judgment.

**5.      Factor Six: Whether Default is Due to Excusable Neglect**

There is no evidence that Defendant's failure to appear is due to excusable neglect. This factor favors entry of default judgment.

**6.      Factor Seven; Strong Policy in Favor of Decision on the Merits**

The Court maintains a strong policy preference in favor of resolution of Plaintiffs' claims on the merits. But Defendant's decision not to appear in this case vitiates against this policy. This factor weighs in favor of entry of default judgment.

*      *      *

Having considered and balanced the Eitel factors, the Court finds that entry of default judgment is proper on all claims. On this basis, the Court GRANTS the Motion.

**D.      Amount of the Default Judgment**

Plaintiffs ask the Court to award $25,000 in damages, but only as "statutory damages against Defendant for its willful and unauthorized use of the Cartier Trademarks." (Mot. at 13 (Dkt. No. 43 at 20).) Plaintiffs ask for no damages to be awarded on their CPA claim. Plaintiffs correctly note they may seek statutory damages between $1,000 to $2,000,000 per mark given

1  that Defendants' failure to defend this action constitute an admission their infringement was

2  willful. (Mot. at 11 (citing 15 U.S.C. § 1117(c)(1); Derek Andrew, Inc. v. Poof Apparel Corp.,

3  528 F.3d 696, 702 (9th Cir. 2008).) As such, Plaintiffs may seek statutory damages ranging

4  between $4,000 and $8,000,000, given the four marks at issue. See 15 U.S.C. § 1117(c)(1).

5        Although the Court accepts that the infringement here was willful, the Court does not

6  find that the evidence supports anything more than the minimum statutory amount of damages.

7  While Defendant appears to have operated with some sophistication, there is little evidence that

8  the counterfeit scheme was long-lasting or far-reaching. Plaintiffs have shown only that

9  Defendant obtained $602 from the sales of the counterfeit rings. And while Plaintiffs "believe

10 that Defendant's actual sales of counterfeit Cartier rings is higher than these records reveal," they

11 offer not objective evidence to prove this point. (Mot. at 13 (citing Garrett Decl. ¶ 6).) Based on

12 the record presented, the Court finds an award of $4,000 is an appropriate statutory award for

13 Defendant's willful violation of the four trademarks, and AWARDS $4,000 to Plaintiffs as

14 damages for all claims alleged in this action. The Court notes that it has not awarded any

15 damages to Plaintiffs on their CPA claim, as they asked for no such relief.

16 **E.    Injunctive Relief**

17       The Court finds it appropriate to enter a permanent injunction against Defendant on the

18 terms Plaintiffs request. "As a general rule, a permanent injunction will be granted when liability

19 has been established and there is a threat of continuing violations." MAI Sys. Corp. v. Peak

20 Computer, Inc., 991 F.2d 511, 520 (9th Cir. 1993). And the Lanham Act authorizes "the 'power

21 to grant injunctions according to principles of equity and upon such terms as the court may deem

22 reasonable, to prevent the violation of any right' of the trademark owner." Reno Air Racing

23 Ass'n., Inc. v. McCord, 452 F.3d 1126, 1137 (9th Cir. 2006) (quoting 15 U.S.C. § 1116(a)).

24

A plaintiff seeking permanent injunctive relief must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

The Court finds that all four eBay factors favor entry of a permanent injunction. First, based on the admitted allegations in the amended complaint, Defendant's trademark infringement and violations of the CPA have caused irreparable harm to Plaintiffs' goodwill and reputation and have caused it to incur expenses to prevent further damage. Second, Plaintiffs have shown that monetary damages alone will not necessarily prevent Defendant from engaging in further infringing conduct. Given Defendant's decision not to appear in this case, there can be no assurances that it will no longer engage in the conduct at issue in this case. This satisfies the Court that monetary damages alone are insufficient. Third, the equities favor Plaintiffs, who seek to enjoin Defendant from engaging in illegal conduct that benefits only Defendant. This favors Plaintiffs and the requested injunction. Fourth, an injunction prohibiting Defendant from engaging in further conduct that infringes on Plaintiffs' trademarks will serve the public interest. The Court GRANTS the Motion and ENTERS the following PERMANENT INJUNCTION against Defendant and its officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them who receive actual notice of this Order from:

1.    Selling counterfeit or infringing products in Amazon's stores;

2.    Selling counterfeit or infringing products to Amazon or any Amazon affiliate;

3.    Manufacturing, importing, distributing, offering to sell, or selling any product using Cartier's brand or trademarks, or which otherwise infringes Cartier's intellectual property, in any store or in any medium; and

4.    Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities listed in (a) through (c) above.

The Court also retains jurisdiction over this case for the purpose of enforcing this Order and Injunction.

## CONCLUSION

The Court finds that Plaintiffs are entitled to entry of default judgment in their favor and for an order enjoining Defendant from further conduct that violates the Trademark laws and the CPA. As explained above, the Court GRANTS the Motion for Default Judgment and PERMANENTLY ENJOINS Defendant on the terms specified above. Plaintiffs' counsel is hereby directed to serve a copy of this Order and Injunction on Defendant.

The clerk is ordered to provide copies of this order to all counsel.

Dated April 2, 2024.

Marsha J. Pechman
United States Senior District Judge